No. 23-1125

═══════════════════════════════

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

═══════════════════════════════

ELIZABETH SINES, et al.,
Plaintiffs-Appellees,

v.

CHRISTOPHER CANTWELL,
Defendant-Appellant.

───────────────────────────────

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

───────────────────────────────

**INFORMAL RESPONSE BRIEF
OF PLAINTIFFS-APPELLEES**

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES......................................................2

STATEMENT OF THE CASE AND STATEMENT OF THE FACTS.................4

STANDARDS OF REVIEW ...........................................................9

SUMMARY OF THE ARGUMENT ................................................10

ARGUMENT ...........................................................................13

    I.    Cantwell Waived His Due Process Objections to the Jury Trial in Which He Agreed to Participate. ...................................13

    II.    Cantwell Has Not Shown Any Abuse of Discretion in the District Court's Admission of Plaintiffs' Expert Testimony. ............16

    III.    Cantwell Has Not Shown An Abuse of Discretion in the District Court's Limiting Instruction on the Use of Deposition Testimony. ...................................................21

    IV.    Cantwell's Challenges to the Jury's Verdict Lack Merit...................24

        A.    Substantial Evidence Supported the Jury's Verdict.................24

        B.    Cantwell's Speculations of an "Improper Jury Motive" Do Not Warrant Reversal...........................................31

        C.    Cantwell's Challenge to the Jury's Verdict as Unconstitutionally Vague Is Meritless. ...................................33

        D.    Cantwell's First Amendment Challenge Does Not Overcome the Presumption That the Jury Followed the Jury Instructions........................................................34

    V.    Cantwell Has Not Shown That the Punitive Damages Award Is Unconstitutionally Excessive or Oppressive......................................35

    VI.    Cantwell's Challenges to the Awards of Attorney's Fees and Cost Do Not Warrant Vacatur of the Awards. ...................................38

        A.    This Court Lacks Jurisdiction Over the Magistrate Judge's Non-Final Order on Attorney's Fees and Costs. ........38

        B.    Cantwell Waived Any Challenge to the Award of Attorney's Fees and Costs. ...................................................40

**TABLE OF CONTENTS**
(continued)

**Page**

C.    In Any Event, Cantwell Has Not Established Any Abuse of Discretion in the Awards. ....................................................41

CONCLUSION ........................................................................................43

# TABLE OF AUTHORITIES

**Page**

## Cases

*Almy v. Grisham*,
273 Va. 68 (2007) ...................................................................24

*Amerson v. Stevenson*,
504 F. App'x 217 (4th Cir. 2013) .........................................41

*Berry v. Target Corp.*,
214 F. Supp. 3d 530, 535 (E.D. Va. 2016) ..........................25

*Bright v. Coastal Lumber Co.*,
962 F.2d 365 (4th Cir. 1992) .................................................31

*Bunn v. Oldendorff Carriers GMBH & Co. KG*,
723 F.3d 454 (4th Cir. 2013) ...............................10, 22, 23

*Burgess v. Goldstein*,
997 F.3d 541 (4th Cir. 2021) ..................................................9

*CaterCorp, Inc. v. Catering Concepts, Inc.*,
246 Va. 22 (1993) ...................................................................24

*Charleston Area Med. Ctr., Inc. v. Blue Cross and Blue Shield*,
6 F.3d 243 (4th Cir. 1993) .....................................................24

*Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.*,
249 Va. 39 (1995) ...................................................................24

*Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred
Condo., Inc.*,
281 Va. 561 (2011) .................................................................37

*CSX Transp., Inc. v. Hensley*,
556 U.S. 838 (2009)...........................................................22, 35

*D.B. v. Cardall*,
826 F.3d 721 (4th Cir. 2016) .................................................10

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re Dist. Clerk's Office Operations*,
   857 F. App'x 766 (4th Cir. 2021) ......................................................39

*Figg v. Schroeder*,
   312 F.3d 625 (4th Cir. 2002) ...........................................................10

*First Union Commercial Corp. v. GATX Capital Corp.*,
   411 F.3d 551 (4th Cir. 2005) .............................................................9

*Gambino v. Payne*,
   No. 1:12-cv-00824, 2020 WL 4260523 (W.D.N.Y. July 24, 2020)............15, 16

*Gentry v. E. W. Partners Club Mgmt. Co.*,
   816 F.3d 228 (4th Cir. 2016) ......................................................10, 21

*Hill v. Coggins*,
   867 F.3d 499 (4th Cir. 2017) ...........................................................17

*Hinkle v. City of Clarksburg*,
   81 F.3d 416 (4th Cir. 1996) ............................................................35

*Hudson v. Pittsylvania County*,
   774 F.3d 231 (4th Cir. 2014) ...........................................................41

*In re Hutchinson*,
   5 F.3d 750 (4th Cir. 1993) .............................................................16

*Jackson v. Lightsey*,
   775 F.3d 170 (4th Cir. 2014) ...........................................................40

*Kemp v. AT&T*,
   393 F.3d 1354 (11th Cir. 2004) ........................................................37

*King v. Rubenstein*,
   825 F.3d 206 (4th Cir. 2016) ...........................................................40

*Lee v. Nationwide Mut. Ins. Co.*,
   255 Va. 279 (1998) .....................................................................30

# TABLE OF AUTHORITIES
(continued)

**Page**

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982) ................................................................... 15

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods.*
    *Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    27 F.4th 291 (4th Cir. 2022) ...................................................... 41

*McKiver v. Murphy-Brown, LLC*,
    980 F.3d 937 (4th Cir. 2020) ...................................................... 37

*Morning v. Zapata Protein (USA)*,
    128 F.3d 213 (4th Cir. 1997) ...................................................... 33

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ................................................................... 35

*Noel v. Artson*,
    641 F.3d 580 (4th Cir. 2011) ................................................. 10, 17

*Ostergren v. Cuccinelli*,
    615 F.3d 263 (4th Cir. 2010) ...................................................... 35

*Poynter v. Ratcliff*,
    874 F.2d 219 (4th Cir. 1989) ................................................. 31, 32

*Prieto v. Clarke*,
    780 F.3d 245 (4th Cir. 2015) ...................................................... 15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ................................................................... 29

*Saunders v. Branch Banking & Tr. Co. of Va.*,
    526 F.3d 142 (4th Cir. 2008) ................................................. 35, 37

*Shirvinski v. U.S. Coast Guard*,
    673 F.3d 308 (4th Cir. 2012) ...................................................... 24

# TABLE OF AUTHORITIES
(continued)

**Page**

*Smith v. Barry*,
  502 U.S. 244 (1992)................................................................1

*Smith v. Barry*,
  985 F.2d 180 (4th Cir. 1993) ...............................................39

*Snoeyenbos v. Curtis*,
  60 F.4th 723 (4th Cir. 2023) ................................................23

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
  318 F.3d 592 (4th Cir. 2003) ...............................................17

*Torres v. Oakland Scavenger Co.*,
  487 U.S. 312 (1988)..............................................................39

*United States v. Dennis*,
  19 F.4th 656 (4th Cir. 2021) ................................................33

*United States v. Hassan*,
  742 F.3d 104 (4th Cir. 2014) ...............................................19

*United States v. Midgette*,
  478 F.3d 616 (4th Cir. 2007) ...............................................40

*United States v. Palacios*,
  677 F.3d 234 (4th Cir. 2012) ...............................................20

*United States v. Smith*,
  919 F.3d 825 (4th Cir. 2019) ...............................................19

*In re Varat Enters., Inc.*,
  81 F.3d 1310 (4th Cir. 1996) ...............................................14

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982)..............................................................33

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
  510 F.3d 474 (4th Cir. 2007) ..........................................21, 23

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Westmoreland v. TWC Admin. LLC,*
  924 F.3d 718 (4th Cir. 2019) ............................................................9

*Williams v. Prof'l Transp. Inc.,*
  294 F.3d 607 (4th Cir. 2002) .......................................................30, 32

*Wright v. Collins,*
  766 F.2d 841 (4th Cir. 1985) ...........................................................41

**Statutes**

28 U.S.C. § 1291 ......................................................................1, 39

28 U.S.C. § 1292 ...........................................................................39

28 U.S.C. § 1331 ............................................................................1

42 U.S.C. § 1985(3) .........................................................................7

42 U.S.C. § 1986 ............................................................................7

Va. Code § 8.01-42.1 ................................................................*passim*

**Other Authorities**

Fed. R. App. P. 3 ..........................................................................39

Fed. R. App. P. 4 ..........................................................................39

Fed. R. Civ. P. 50(a)(1) ....................................................................24

Fed. R. Civ. P. 50(b) .....................................................................7, 9

Fed. R. Civ. P. 54(d) ................................................................*passim*

Fed. R. Civ. P. 59(a) ........................................................................7

Federal Rule of Evidence 703 ..........................................................17, 20

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the case pursuant to 28 U.S.C. § 1331. Following a jury verdict in favor of Plaintiffs-Appellees ("Plaintiffs"), the district court entered judgment on January 9, 2023, against Defendant-Appellant Christopher Cantwell ("Cantwell") and his co-Defendants. Cantwell timely appealed the judgment on January 30, 2023. This Court has jurisdiction over that appeal pursuant to 28 U.S.C. § 1291.

After Cantwell appealed, the magistrate judge issued a final order awarding costs to Plaintiffs for certain discovery expenses. Although Cantwell did not file a notice of appeal, this Court has jurisdiction over Cantwell's challenges to that order. *See* 28 U.S.C. § 1291; *see also Smith v. Barry*, 502 U.S. 244, 248–49 (1992) (holding that informal brief may act as the functional equivalent of a notice of appeal). The magistrate judge also issued a separate report and recommendation, which recommended that the district court grant in part Plaintiffs' request for attorney's fees and Federal Rule of Civil Procedure 54(d) costs. This Court lacks jurisdiction over Cantwell's challenges to that report and recommendation, which was a non-final order. Cantwell has not filed a notice of appeal from the district court's final order adopting that report and recommendation.

-1-

## STATEMENT OF THE ISSUES

1.  Whether Cantwell waived due process objections to the jury trial when he knowingly and voluntarily agreed to proceed to trial on the claims against him?

2.  Whether Cantwell has shown an abuse of discretion in the district court's admission at trial of testimony from Plaintiffs' experts?

3.  Whether Cantwell can show reversible error based on his speculation that the jury did not follow the district court's limiting instruction that the jury must not consider certain deposition testimony in connection with Plaintiffs' claims against Cantwell?

4.  Whether Cantwell is not entitled to judgment as a matter of law on the verdict against him because:

    a.  Substantial evidence from the 22-day trial supports the jury's verdict,

    b.  Cantwell's speculations of an "improper jury motive" are insufficient because a jury is presumed to be impartial and the district court made a credibility determination to seat a challenged juror,

    c.  Cantwell has not shown that the jury instructions—which correctly stated the law—were "unconstitutionally vague," and

    d.     Cantwell has not shown that the jury—which was instructed on the difference between protected and unprotected speech—held him liable for speech protected by the First Amendment?

5.    Whether Cantwell has shown reversible error in the punitive damages award, which was well within the range of a constitutionally permissible ratio, and where Cantwell submitted no evidence at trial of an inability to pay?

6.    Whether Cantwell's challenges to the magistrate judge's award of discovery costs to Plaintiffs and the magistrate judge's report and recommendation that the district court should grant in part Plaintiffs' motion for attorney's fees and Rule 54(d) costs should be rejected because:

    a.     This Court lacks appellate jurisdiction over Cantwell's challenge to the non-final magistrate judge's report and recommendation to award attorney's fees and Rule 54(d) costs to Plaintiffs, and Cantwell has failed to appeal the district court's final order;

    b.     Even assuming jurisdiction, Cantwell waived any challenge to the award of attorney's fees and Rule 54(d) costs to Plaintiffs' counsel by failing to object to the magistrate judge's report and recommendation; and

    c.     Cantwell fails to show an abuse of discretion in the awards of costs and attorney's fees?

## STATEMENT OF THE CASE AND STATEMENT OF THE FACTS

This case stems from the violent events planned and executed in Charlottesville, Virginia on August 11 and 12, 2017. Hundreds of white supremacists, white nationalists, and neo-Nazis descended upon Charlottesville, Virginia to take part in the "Unite the Right" rally—or, as Defendants called it, the "Battle of Charlottesville."

Defendants, including Cantwell, spent months planning this event, in the hope that it would spark a "race war." Although Defendants belonged to different white nationalist, white supremacist and similar organizations and came from different parts of the country, they were united by a profound hatred for religious and racial minorities and a desire to take action to intimidate and commit violence against those who opposed their views. Among other things, Defendants encouraged rally attendees to bring weapons and engage in violence under the guise of self-defense. Cantwell—an open advocate for a white ethnostate as well as an open advocate of violent racism and antisemitism[1]—helped to plan and promote Unite the Right during summer 2017, which included inviting various co-Defendants and co-conspirators to speak on his podcast. (Day 16 Tr. 217:6–8; 220:12–20.[2]) Cantwell

---

[1] For example, Cantwell openly proclaimed his violent form of racism and antisemitism, referring to Jews as "oven dodging kikes," (Day 16 Tr. 210:20–22), claiming that "[t]he Jew is the enemy of the human race," (*id*. 211:16–18), and proclaiming "gas the kikes, race war now." (*Id*. 236:16–237:1.)

[2] All day transcript citations are to the transcript from the jury trial proceedings.

told his co-Defendant Richard Spencer that he was "willing to risk a lot for our cause, including violence and incarceration." (PX-3317.[3]) Before leaving for Charlottesville, Cantwell grabbed several Kubotans—a handheld baton weapon—and canisters of pepper spray, (Day 16 Tr. 242:1–15), to "better arm our people," (*id.* 254:10–14).

On the harrowing weekend of August 11, 2017, Defendants followed through on their plans. They stormed Charlottesville and committed repeated acts of racially motivated intimidation and violence against Plaintiffs and others.

On Friday, August 11, after dark, Defendants—including Cantwell—marched through the center of the University of Virginia ("UVA") campus leading hundreds of neo-Nazis, wielding burning torches and chanting "Jews will not replace us" and "blood and soil." (*See* Day 9 Tr. 148:10–14.) Cantwell was one of the leaders of the Torch March through the UVA campus. (*See* PX-2805; PX-2594.) After swarming up and around the iconic UVA Rotunda, they arrived at the Thomas Jefferson statue and encircled a group of peaceful counter-protestors (including two of the Plaintiffs), pinned them against the statue, and refused to let them leave. They threw burning torches and fluid at the counter-protestors, leading them to believe they were going to be burned alive, and kicked, punched, pepper sprayed, and verbally harassed them. Cantwell was directly involved in the violence in the Unite

---

[3] All "PX" citations refer to Plaintiffs' exhibits introduced at trial.

the Right rally and did not dispute his involvement.  Cantwell pleaded guilty to two

counts of assault and battery for his crimes on August 11, 2017.

The violence resumed and intensified on Saturday, August 12.  Defendants

and their foot soldiers rampaged through Charlottesville and unleashed several full-

on attacks against Plaintiffs and many others.  The brutality culminated in Defendant

James Fields driving his car into a group of counter-protestors, killing Heather Heyer

and injuring many others, including many of the Plaintiffs.  As a result of

Defendants' wanton violence, Plaintiffs suffered grievous injuries, both physical and

emotional—including a skull fracture, a shattered leg, concussions, traumatic brain

injuries, lacerations, PTSD, anxiety, and depression.

Plaintiffs sued the Defendants, including Cantwell, in October 2017.  On

October 25, 2021, after four years of litigation, Plaintiffs presented their claims to a

jury with the trial ultimately spanning more than four weeks and 22 trial days.

Plaintiffs tried their claims against 23 Defendants, 13 of whom appeared at trial.  The

parties admitted 917 exhibits during trial, and 35 witnesses were called to testify or

had portions of their depositions played to the jury.

On November 19, 2021, the claims were submitted to the jury.  (ECF No.

1468.[4])  This included three claims asserted by all Plaintiffs against all Defendants,

---

[4] All "ECF" citations are to the district court's docket in *Elizabeth Sines, et al. v.
Jason Kessler, et al.*, No. 3:17-cv-00072-NKM-JCH (W.D. Va.).

as follows: (1) a claim against all Defendants that one or more Defendants engaged in a conspiracy to commit racially motivated violence in violation of 42 U.S.C. § 1985(3) ("Count 1"); (2) a claim against all Defendants that one or more Defendants had knowledge of the conspiracy found in Count 1 and failed to prevent the conspiracy from taking place in violation of 42 U.S.C. § 1986 ("Count 2"); and (3) a Virginia state law civil conspiracy claim against all Defendants ("Count 3"). (ECF No. 1461 (Final Jury Instructions and Verdict Form).) In addition, Plaintiffs Natalie Romero and Devin Willis asserted a claim under Virginia Code § 8.01-42.1 for racial, religious, or ethnic harassment against Defendants Jason Kessler, Richard Spencer, Elliott Kline, Robert Ray, and Cantwell, which also was submitted to the jury ("Count 4").[5] (*Id.*)

After two days of deliberations, the jury returned a verdict in Plaintiffs' favor on four claims (Counts 3, 4, 5 and 6) and awarded Plaintiffs over $25 million in damages. (ECF No. 1478.) Defendants, including Cantwell, renewed their Rule 50(b) motions for judgment as a matter of law and/or requested a new trial under Rule 59(a). (ECF Nos. 1488, 1522, 1536, 1549, 1550, 1557.) Defendants, including

---

[5] Other claims were submitted to the jury, including: (1) a claim by Plaintiffs Romero, April Muñiz, Seth Wispelwey, Elizabeth Sines, Marissa Blair, Marcus Martin, and Willis against James Alex Fields, Jr. under Virginia Code § 8.01-42.1 ("Count 5"), and (2) a claim by Plaintiffs Romero, Muñiz, Thomas Baker, Sines, Blair, and Martin against Fields for assault or battery ("Count 6"). These claims are not at issue in this appeal.

Cantwell, separately challenged the jury's punitive damages award. (ECF Nos. 1488, 1522, 1536, 1542–43, 1548, 1550–51, 1555–57.)

On December 30, 2022, the district court issued an 89-page opinion granting in part and denying in part Defendants' post-trial motions. (ECF No. 1622.) The district court entered an order affirming the jury verdict on liability and the jury's award of compensatory damages but reducing the jury's punitive damages award to a total of $350,000. (ECF No. 1629.) The district court entered its final judgment on January 9, 2023. (ECF No. 1631.) Cantwell appealed the judgment on January 30, 2023.[6] (ECF No. 1640.)

Following Cantwell's appeal, on March 7, 2023, Magistrate Judge Joel C. Hoppe entered an order awarding Plaintiffs costs in the amount of nearly $1.27 million for discovery expenses reimbursable under the parties' ESI Stipulation and Order. (ECF No. 1656.) Cantwell did not file a notice of appeal from that order. Magistrate Hoppe separately issued a report and recommendation on March 7, 2023, which recommended granting in part Plaintiffs' motion for attorneys' fees and costs

---

[6] Cantwell's appeal is related to three consolidated appeals from the district court's judgment pending in the Fourth Circuit. *See Elizabeth Sines, et al. v. Michael Hill, et al.*, No. 23-1119 (L) (4th Cir.) (lead case); *Elizabeth Sines, et al. v. Nathaniel Damigo*, No. 23-1122 (4th Cir.); and *Elizabeth Sines, et al. v. Jason Kessler, et al.*, No. 23-1154 (4th Cir.) (cross-appeal by Plaintiffs). Cantwell's appeal is also related to two other *pro se* appeals. *Elizabeth Sines, et al. v. Jeff Schoep*, No. 23-1123 (4th Cir.); *Elizabeth Sines, et al. v. Richard Spencer*, No. 23-1112 (4th Cir.) (appeal dismissed).

under Federal Rule of Civil Procedure 54(d). (ECF No. 1655.) Although the magistrate judge warned that a failure to timely object could result in a waiver on appeal, no party filed an objection to the report and recommendation within the required 14-day period.

On March 20, 2023, Cantwell filed his informal opening brief in this Court. On March 30, 2023, the district court issued an order adopting the magistrate judge's report and recommendation on attorney's fees and Rule 54(d) costs. (ECF No. 1660.) Cantwell has not filed a notice of appeal from that order.

## STANDARDS OF REVIEW

The Court reviews de novo the denial of a Rule 50(b) motion for judgment. *Burgess v. Goldstein*, 997 F.3d 541, 549 (4th Cir. 2021). The Court generally defers to the jury's findings. "If, viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in [the non-moving party's] favor, we are constrained to affirm the jury verdict." *First Union Commercial Corp. v. GATX Cap. Corp.*, 411 F.3d 551, 556 (4th Cir. 2005) (citation omitted). The Court "determine[s] if a reasonable jury could have found the verdict" and "do[es] not weigh evidence nor judge the credibility of witnesses." *Id*. The Court "cannot reverse a jury verdict simply because we might take a different view of the facts upon reading a cold record." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 730 (4th Cir. 2019).

-9-

The Court reviews for abuse of discretion a district court's denial of a motion for a new trial. *Bunn v. Oldendorff Carriers GMBH & Co. KG*, 723 F.3d 454, 468 (4th Cir. 2013). The Court "will not reverse such a decision save in the most exceptional circumstances." *Figg v. Schroeder*, 312 F.3d 625, 641 (4th Cir. 2002) (internal quotation marks omitted).

The Court reviews evidentiary rulings "under the well-known abuse of discretion standard, and we will only overturn an evidentiary ruling that is arbitrary and irrational." *Noel v. Artson*, 641 F.3d 580, 591 (4th Cir. 2011) (internal quotation marks omitted). Similarly, this Court "review[s] challenges to jury instructions for abuse of discretion, bearing in mind that 'a trial court has broad discretion in framing its instructions to a jury.'" *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 233 (4th Cir. 2016) (citation omitted).

This Court reviews constitutional contentions de novo. *D.B. v. Cardall*, 826 F.3d 721, 739 (4th Cir. 2016).

## SUMMARY OF THE ARGUMENT

None of Cantwell's challenges on appeal establishes any error in the jury instructions, in the jury's verdict, or in the district court's rulings. Cantwell raises challenges to the jury verdict that the district court rejected in a detailed and lengthy written opinion, presents issues for the first time on appeal, and raises issues over which this Court lacks jurisdiction. All should be rejected.

*First*, Cantwell's due process objections to the jury trial provide no basis for a new trial because he waived those objections when he knowingly and voluntarily agreed to proceed to trial. Despite his contentions on appeal about the difficulties he experienced in accessing discovery, Plaintiffs provided Cantwell with discovery, the district court took steps to ensure Cantwell's access, and Cantwell was offered the option but declined to proceed separately to allow him the additional time he initially sought. During trial, Cantwell vigorously defended himself.

*Second*, Cantwell has not shown that the district court abused its discretion in admitting testimony from Plaintiffs' experts. Moreover, Plaintiffs timely disclosed their experts to Cantwell, even after learning of an inadvertent mistake in service. Cantwell had over six months to access the reports before trial.

*Third*, Cantwell has shown no abuse of discretion in the district court's limiting instruction about the use of deposition testimony against him. Cantwell concedes that the district court properly instructed the jury. His mere speculation that the instruction was not enough does not warrant a new trial.

*Fourth*, Cantwell's numerous arguments aimed at undermining the jury verdict show no error in the district court's denial of his motion for judgment as a matter of law. The evidence admitted at trial was more than legally sufficient for the jury to find against Cantwell on the claims of civil conspiracy in violation of Virginia law and in violation of Virginia Code § 8.01-42.1 (Virginia's hate crime

-11-

statute).  Cantwell's speculations of an improper jury motive are unavailing because jurors are presumed to be impartial, and no facts suggest otherwise here.  Cantwell's assertion that the jury's verdict was unconstitutionally vague is meritless because there is nothing vague about the jury finding him liable on Counts 3 and 4. Cantwell's assertion that the jury held him liable for speech protected by the First Amendment is also meritless.  The district court properly instructed the jury on the difference between protected and unprotected speech.

*Fifth*, Cantwell's challenges to the punitive damages award are incorrect.  His argument that the jury improperly punished him for his words ignores the conduct for which he was held liable, ignores the jury instructions, and otherwise rehashes his First Amendment argument.  Cantwell argues the district court erred in assessing the constitutionality of the punitive damages assessed against him, but that argument, too, ignores the Court's reasoning and the jury's verdict.  Cantwell's assertion that the district court failed to consider his inability to pay is unavailing because Cantwell did not submit any evidence of his purported inability to pay with his post-trial briefing.

*Sixth*, Cantwell's challenges to the magistrate judge's report and recommendation, which recommended that the district court grant in part Plaintiffs' motion for attorneys' fees and Rule 54(d) costs, and the magistrate judge's separate order awarding Plaintiffs for discovery expenses, are meritless.  This Court lacks

jurisdiction over Cantwell's challenge to the magistrate judge's report and recommendation on attorney's fees and Rule 54(d) costs, which was not a final order. Nor has he appealed the district's order adopting that report and recommendation. Even if there were jurisdiction, Cantwell has waived any challenge to the district court's order because he did not object to the magistrate judge's recommendation in the district court. Cantwell has not otherwise established any abuse of discretion in the awards of attorney's fees and costs to Plaintiffs, but rather reiterates meritless challenges to the jury's verdict.

## ARGUMENT

## I. CANTWELL WAIVED HIS DUE PROCESS OBJECTIONS TO THE JURY TRIAL IN WHICH HE AGREED TO PARTICIPATE.

Cantwell asserts that this Court must "dismiss this case . . . or order a new trial for all Defendants" due to alleged violations of his due process rights. (Br. at 28–35.) Cantwell's argument is based on the difficulty he had in accessing discovery and district court filings, which he asserts "prejudiced his defense." (*Id.* at 33.) Cantwell was given the opportunity to proceed separately and delay his own trial, but elected to proceed with the trial below, waiving his due process argument. In addition, Cantwell's extensive participation in trial, including exercising peremptory strikes against potential jurors, conducting extensive and well-prepared cross-examinations, and presenting closing argument (ECF No. 1536 at 10), belies Cantwell's assertion that he was unable to prepare or mount a defense.

-13-

At the threshold, this Court should not consider Cantwell's claim because he knowingly and intentionally waived it by electing to proceed to trial. Specifically, on the eve of trial, after Cantwell's continued assertions of prejudice to his defense, Plaintiffs moved to sever their claims against Cantwell, so he could proceed separately and would have more time to prepare. (ECF No. 1305.) The district court asked Cantwell whether he wanted to continue to proceed as planned, explained the consequences that would flow from that decision, and gave him numerous chances not to proceed with the scheduled trial. (Day 1 Tr. 6:10–7:13, 10:15–11:2.) Cantwell decided to proceed, as even he concedes.

As the district court concluded (ECF No. 1622 at 40–41), Cantwell's decision to proceed with trial constitutes a knowing and voluntary waiver of the due process arguments he asserts here. *In re Varat Enters., Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996) ("[T]raditional waiver principles come into play when a party voluntarily or intentionally relinquishes a known claim right."). And as the district court concluded in the alternative, even independent of any waiver, Cantwell was equitably estopped from re-raising these arguments following his choice to proceed to trial. (ECF No. 1622 at 40–41 & n.16.)

Even if the Court were to consider the merits of Cantwell's claim, despite his waiver and the district court's estoppel holding, it should affirm. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or

-14-

property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "[A]t a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) (citation omitted). Here, Cantwell does not identify any protected liberty or property interest at issue, nor can he show a deprivation of any such interest by pointing to his circumstances as a *pro se* incarcerated litigant. *Cf. Gambino v. Payne*, No. 1:12-cv-00824, 2020 WL 4260523, at *3 (W.D.N.Y. July 24, 2020) (denying incarcerated *pro se* civil litigant's motion to stay case until his release by reasoning that although "an incarcerated, *pro se* litigant may encounter more difficulties in pursuing his or her case than a litigant who is not incarcerated or residing in a halfway house, this, in itself, is not a valid reason for the Court to stay a proceeding"). He suggests, indirectly and in conclusory fashion, that severance of his claims would have violated his due process rights, (Br. at 34), but he again cannot identify any protected liberty or property interest in a joint trial with the other Defendants.

Moreover, for all the difficulties Cantwell asserts regarding access to discovery, he plainly overcame them. Plaintiffs sent him a "2 Terabyte encrypted hard drive" during discovery. (Br. at 28.) He had time to review these documents prior to the beginning of trial. (*Id.* at 30–31.) Prior to trial, the district court ordered

-15-

that Cantwell be transported from USP Marion in Illinois to Charlottesville to prepare for trial.  (ECF No. 1105.)  The district court provided him with computer access, and Plaintiffs' counsel provided Cantwell with all the trial exhibits via USB hard drive.  (Br. at 30–31.)  As the district court in *Gambino* noted, the *pro se* incarcerated litigant, like Cantwell, was "able to consistently file motions and letters as well as respond" to the opposing parties' filings.  2020 WL 4260523, at *3.[7]

Cantwell also objects to the trial court's management of the trial schedule, but a district court has broad discretion over the trial process, and there is no basis to reverse the jury verdict or order a new trial here.  *See In re Hutchinson*, 5 F.3d 750, 758 (4th Cir. 1993) (concluding that trial court's management of trial is reviewed for abuse of discretion).

The vigorous defense Cantwell mounted before, during, and after trial, the choices the district court offered him, and the election he chose to make eliminate any argument that his due process rights were violated.

## II.    CANTWELL HAS NOT SHOWN ANY ABUSE OF DISCRETION IN THE DISTRICT COURT'S ADMISSION OF PLAINTIFFS' EXPERT TESTIMONY.

Cantwell objects to the district court's admission of the testimony of

---

[7] In fact, as the court below explained, "Cantwell . . . fil[ed] a multitude of pre-trial motions—many more than any other Defendant" or even "the combined other Defendants—all of which" the district court and the magistrate judge "fully considered and resolved." (ECF No. 1622 at 41–42 (citing ECF Nos. 1056, 1062, 1063, 1066, 1077, 1084, 1085, 1088, 1090, 1096, 1098, 1099, 1102, 1157, 1158, 1159, 1160).)

Plaintiffs' experts Deborah Lipstadt, Ph.D., Peter Simi, Ph.D., and Kathleen Blee, Ph.D., as prejudicial. (ECF No. 1347.) The district court issued multiple orders, which concluded that Plaintiffs' experts satisfied Federal Rule of Evidence 703. (ECF Nos. 1338, 1347.) "Evidentiary rulings are reviewed under the well-known abuse of discretion standard, and [this Court] will only overturn an evidentiary ruling that is arbitrary and irrational." *Noel*, 641 F.3d at 591 (internal quotation marks omitted). Cantwell raises four arguments on appeal: (1) Plaintiffs untimely disclosed their experts, (2) the admission of this testimony shifted the burden on Plaintiffs' claims, (3) Dr. Blee's testimony was improper, and (4) Dr. Simi impermissibly relied on hearsay. (Br. at 35–37.) None of these arguments shows an abuse of discretion.

*First*, Cantwell's assertion that Plaintiffs failed to timely disclose their experts does not show any error. (*Id.* at 35–36.) Determining whether the timing of a party's disclosure of evidence was substantially justified or harmless requires consideration of five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the offering party's explanation for its failure timely to disclose the evidence; (3) the ability of the party against whom the evidence would be offered to cure the surprise; (4) the extent to which allowing the evidence would disrupt the trial; and (5) the importance of the evidence. *Hill v. Coggins*, 867 F.3d 499, 507 (4th Cir. 2017) (listing the factors from *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). The district court correctly

concluded that any purported failure by Plaintiffs to timely disclose their experts to Cantwell was harmless under this test. (ECF No. 1347.)

Cantwell cannot persuasively contend that he was surprised by Plaintiffs' intention to offer expert testimony at trial. On November 12, 2020, nearly a full year prior to Cantwell's motion to exclude, Cantwell was served notice, by U.S. Mail, of a hearing on his co-Defendants' motion to exclude Plaintiffs' experts. (ECF No. 907.) At that point, at the latest, Cantwell was on notice that Plaintiffs intended to call expert witnesses.

In addition, Cantwell had ample time to cure any purported surprise. Plaintiffs initially disclosed their experts to Cantwell at the email address that Cantwell had identified to Plaintiffs' counsel prior to his incarceration in March 2021. Plaintiffs' failure to timely disclose its experts to Cantwell at his new address, where he was incarcerated, was inadvertent, owing to an administrative mistake resulting from Cantwell's incarceration. (ECF No. 1347 at 2–3.) On April 5, 2021, upon discovering the inadvertent mistake, Plaintiffs re-served Cantwell at his place of incarceration all discovery to which he was entitled, including the expert reports. (*Id.* at 3.) Cantwell moved for sanctions, but the District Court denied his motion and held Cantwell had not suffered any prejudice because of Plaintiffs' inadvertent mistake. (ECF No. 951 at 2.) Despite having access to these reports for over six months, Cantwell waited until the eve of trial to move to exclude the experts'

testimony.  (*See* ECF No. 1157, 1158, 1160.)

The testimony of Plaintiffs' experts was also important.  Plaintiffs' experts explained, among other things, that Defendants, including Cantwell, were using "doublespeak" when they communicated about the racially motivated violence that Defendants intended at Unite the Right, and that "doublespeak" includes coded language and expression associated with Defendants' violent, white supremacist ideology that may appear innocuous to outsiders.  (*E.g.,* Day 14 Tr. 87:12–88:21, 91:23–92:5.)  Expert testimony is proper if it helps explain coded language and other communications of organizations and subcultures that the jury may not otherwise understand.  *See, e.g.*, *United States v. Smith*, 919 F.3d 825, 832, 836–38 (4th Cir. 2019) (affirming admission of expert testimony to explain Defendants' coded communications which included "an assortment of slang, nicknames, and substituted words meant to prevent an outside listener from deciphering their meaning"); *United States v. Hassan*, 742 F.3d 104, 130–31 (4th Cir. 2014) (finding no abuse of discretion where the district court admitted expert testimony concerning the "meaning and context of various words and phrases used by the defendants which are commonly used by persons practicing extreme Islam").  The experts offered testimony that helped the jury understand the rally, the communications, and the alt-right symbolism used within the context of white supremacy and antisemitism. (*E.g*., Day 14 Tr. 62:22–64:14, 186:3–6.)  Defendants' motivations were relevant to

-19-

the jury instructions on Counts 3 and 4. (*See* ECF No. 1461 (Instruction Nos. 23–24).)

*Second*, Cantwell argues that the admission of the expert testimony "shifted the burden of proof." (Br. at 35.) This is incorrect. As the district court instructed the jury, Plaintiffs had the burden to prove their claims. (ECF No. 1461 at 12 ("As I explained to you at the beginning of the trial, unless otherwise instructed, Plaintiffs bear the burden of proving their claims against each Defendant by what is called a 'preponderance of the evidence.'").)

*Third*, Cantwell disputes the admission of Dr. Blee's testimony based merely on its content (Br. at 37), but identifies no error in its admission. That Cantwell disagrees with this expert's testimony does not mean the district court abused its discretion by admitting the testimony for the jury to consider.

*Finally*, Cantwell's challenge to Dr. Simi's testimony as improperly relying on hearsay, *i.e.*, a newspaper article (*id.*), fails as a matter of law. Experts may rely on inadmissible evidence, such as hearsay, in forming their opinions so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703; *see also United States v. Palacios*, 677 F.3d 234, 243–44 (4th Cir. 2012) (affirming admission of expert testimony where expert used testimonial hearsay, along with other sources of information and knowledge "to form an independent opinion about the gang's

-20-

history, operation, structure, practices, and symbols"). Cantwell makes no argument that Dr. Simi deviated from the norms of his field—a point that the district court observed when it rejected Cantwell's two motions seeking to exclude the testimony of Plaintiffs' experts. (ECF No. 1347 at 2 ("Cantwell makes no argument that Plaintiffs' experts deviated from the norms of their respective fields.").) Moreover, Dr. Simi's expert report (completed with Dr. Blee) expressly stated that Dr. Simi's methodology followed researched protocols in his field. (*See, e.g.*, ECF No. 832-2 at 3 ("The methodological steps in our analysis follow the research protocols that are standard in rigorous qualitative analyses in the social sciences, as codified in a report by the National Science Foundation for which one of the authors of this report (Blee) was a principal author.").) Thus, Cantwell fails to establish that the district court abused its discretion in admitting Plaintiffs' experts.

III. **CANTWELL HAS NOT SHOWN AN ABUSE OF DISCRETION IN THE DISTRICT COURT'S LIMITING INSTRUCTION ON THE USE OF DEPOSITION TESTIMONY.**

Cantwell's challenge to the district court's instruction limiting the jury's use of Plaintiffs' deposition designations against him—Instruction No. 29—provides no basis for a new trial. (Br. at 27–28.) This Court "review[s] challenges to jury instructions for abuse of discretion, bearing in mind that 'a trial court has broad discretion in framing its instructions to a jury.'" *Gentry*, 816 F.3d at 233 (quoting *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co*., 510 F.3d 474, 484 (4th Cir. 2007)). "Instructions will be considered adequate if construed as a whole, and

in light of the whole record, they adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [objecting] party." *Bunn*, 723 F.3d at 468 (quotation omitted).

Cantwell's conclusory assertion that Instruction No. 29 was insufficient does not establish an abuse of discretion. Juries are presumed to follow the court's instructions. *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009). The district court instructed the jury that, in connection with Cantwell, the jury must not consider deposition testimony that Plaintiffs introduced from Robert Isaacs, Samantha Froelich, Bradley Griffin, Dillon Hopper, Vasillios Pistolis, and Thomas Rousseau. (ECF No. 1461 at 52 (Instruction No. 29).) The court explained to the jury that Cantwell was unable to attend these depositions and lacked notice. (*Id.*) The district court repeatedly gave this instruction to the jury when the relevant deposition testimony was played. (*See, e.g.*, Day 11 Tr. 10:25–11:20, 116:8–20; Day 17 Tr. 31:16–32:3; *see also* ECF No. 1622 at 32–33 & n.14.) Cantwell's mere speculation on appeal that the instruction was insufficient because the jury "could not compartmentalize this testimony" against him (Br. at 7), is legally insufficient to overcome the presumption that the jury followed the court's clear and repeated instructions. *CSX Transp.*, 556 U.S. at 841.

Nor could any asserted insufficiency in the jury instruction warrant a new trial or dismissal of Counts 3 and 4 against Cantwell. "Even if a jury was erroneously

instructed . . . [this Court] will not set aside a resulting verdict unless the erroneous instruction seriously prejudiced the challenging party's case." *Bunn*, 723 F.3d at 468 (citation omitted) (emphasis in original). "Stated slightly differently, 'problems in jury instructions will not warrant reversal of a jury verdict so long as, taken as a whole, the instructions adequately state the controlling legal principles.'" *Snoeyenbos v. Curtis*, 60 F.4th 723, 733 (4th Cir. 2023) (quoting *Volvo Trademark Holding Aktiebolaget*, 510 F.3d at 485).

Here, the district court instructed the jury that they had to consider the evidence against each defendant. (*See* ECF No. 1461 at 12 (Instruction 7 stating, "Plaintiffs bear the burden of proving their claims against Defendant by what is called a 'preponderance of the evidence.'").) And the Court outlined the elements of the claims Plaintiffs needed to prove by a preponderance of the evidence against the Defendants. (*Id.* at 20-30, 36-46 (Instruction Nos. 12–19, 22–26.)) The verdict form provided with the jury instructions separately referred to each Defendant, requiring the jury to evaluate the evidence as to each Defendant individually. (*Id.* at 68–77.) When considered in the context of the other jury instructions and the jury verdict form, any purported error in Instruction No. 29 does not require reversal of the jury verdict. *See Snoeyenbos*, 60 F.4th at 733 ("At most we have one stray loose phrase. But that phrase does not meaningfully detract from the district court's overall accurate description of the applicable law. We see no prejudice, let alone

-23-

serious prejudice, based on the record and instructions as a whole.").

## IV.   CANTWELL'S CHALLENGES TO THE JURY'S VERDICT LACK MERIT.

### A.   Substantial Evidence Supported the Jury's Verdict.

Cantwell's challenges to the jury's verdict holding him liable for Counts 3 and 4 should be rejected.  When determining whether substantial evidence exists to support the jury's verdict, this Court "may not weigh the evidence, pass on the credibility of the witnesses, or substitute [its] judgment of the facts for that of the jury." *Charleston Area Med. Ctr., Inc. v. Blue Cross and Blue Shield*, 6 F.3d 243, 248 (4th Cir. 1993) (simplified).  The verdict must stand when it has "a legally sufficient evidentiary basis."  Fed. R. Civ. P. 50(a)(1).

The jury instructions correctly informed the jury of the elements of Count 3, civil conspiracy under Virginia law, and of Count 4, a claim under Virginia Code § 8.01-42.1.  (ECF No. 1461 at 38–40 (Instruction No. 23: Civil Conspiracy – Under Virginia Law)[8]; *id*. at 41–42 (Instruction No. 24 – Violation of Virginia Code § 8.01-

---

[8] A common-law conspiracy under Virginia law "consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.,* 249 Va. 39, 48 (1995); *see also Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 320 (4th Cir. 2012).  A civil claim for common-law conspiracy "requires proof that the underlying tort was committed," *Almy v. Grisham*, 273 Va. 68, 80 (2007), and that the plaintiffs suffered damages from those acts, *see CaterCorp, Inc. v. Catering Concepts, Inc.,* 246 Va. 22, 28 (1993) ("The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more

-24-

42.1).[9]) Cantwell concedes that the jury instructions were correct (Br. at 2), and the jury found Cantwell liable on these claims (ECF No. 1478.). The evidence introduced at trial was more than sufficient for the jury to find Cantwell liable on Counts 3 and 4.

For example, the evidence at trial showed the following:

- Cantwell conceded that he seriously (not jokingly) advocates for a white ethnostate, (Day 16 Tr. 198:21–23), and that he advocates for achieving that end through violence, including on his podcast, the Radical Agenda. (*Id*. 203:19–25.) He has told his listeners, for instance, that "[s]ome of us got to be fucking cannon fodder for the race war." (*Id*. 206:4–8.) He also posted that "[b]locking traffic is not peaceful protest and every person who reminds you of that without using his car is giving you more slack than you fucking deserve." (*Id*. 207:18–23.) He has sported gear bearing the acronym for "Right Wing Death Squad." (*Id*. 220:3–8.) And he wrote to co-Defendant Spencer in the days before Unite the Right that he was "willing to risk a lot for our cause, including violence and incarceration" and that "[m]any in my audience would follow me there, too, but I want to coordinate and make sure it's worth it to our cause." (PX-3317.)

- Cantwell openly proclaimed his violent form of racism and antisemitism, referring to Jews as "oven dodging kikes," (Day 16 Tr. 210:20–22), claiming that "[t]he Jew is the enemy of the human race," *Id*. 211:16–18, and proclaiming "gas the kikes, race war now." (*Id*. 236:16–237:1; *see also* 237:16–238:3 ("I'm not even a Hitlerite, but I'm like, let's fucking gas the kikes and have a race war, because once I realized they were responsible

---

persons to accomplish an unlawful purpose or use unlawful means." (citation omitted)).

[9] Virginia Code § 8.01-42.1 provides that "[a]n action for injunctive relief or civil damages, or both, shall lie for any person who is subjected to acts of (i) intimidation or harassment, [or] (ii) violence directed against his person . . . where such acts are motivated by racial, religious, gender, disability, gender identity, sexual orientation, or ethnic animosity." Va. Code § 8.01-42.1(A); *see also Berry v. Target Corp*., 214 F. Supp. 3d 530, 535 (E.D. Va. 2016) (Va. Code § 8.01-42.1 "prohibits intimidation or harassment 'motivated by racial . . . animosity.'").

for communism, I was like, oh, wait, wait a second, yeah, that's a fucking really good reason to fucking genocide a group of people."); PX-2571 ("America will never be free until the last kike is strangled with the entrails of the last male Democrat.").)

- During summer 2017, Cantwell helped to plan and promote Unite the Right, inviting Spencer and several other Defendants and co-conspirators to speak on his podcast. (Day 16 Tr. 217:6–8; 220:12–20.) Co-Defendant Invictus asked Cantwell to make a speech in Charlottesville. (*Id*. 221:1– 222:3.) Kessler warned Cantwell by text, "Be ready for Charlottesville. It's going to be a BLM/Antifa shitshow with hundreds of guys—hundreds of our guys on the opposite side. If you want, I can come on Radical Agenda and fill in the details for your audience." (*Id*. 225:10–16; PX-3317.) Cantwell agreed, inviting Kessler on his podcast, and he began promoting the Unite the Right rally. (Day 16 Tr. 225:17–21.) Kessler also encouraged Cantwell to "represent Unite the Right in an interview" with Vice Media, which Cantwell did. (*Id*. 226:12–17; PX-3317.)

- Before leaving for Charlottesville, Cantwell grabbed several Kubotans and canisters of pepper spray. (Day 16 Tr. 242:1–15.) Cantwell explained that he wanted to "better arm our people." (*Id*. 244:10–14.) In a message on the Charlottesville 2.0 Discord server, Cantwell suggested "setting up a parallel event somewhere other than Lee Park for women and children." (*Id*. 245:1–4.) Cantwell did not want women and children at the main event because, as he explained to Vice Media, "I've got to organize an unknown number of armed extremists I've never met through a hostile environment with death threats and legal intimidation. We all have our crosses to bear[.]" (*Id*. 247:4-9.)

- While in Charlottesville, Cantwell actively participated in the violence he had helped plan. On Friday night, August 11, Cantwell marched through the UVA campus alongside hundreds of neo-Nazis, wielding burning torches and chanting "Jews will not replace us." (Day 5 Trial Tr. 172:20– 23.) In fact, Cantwell was one of the leaders of the highly organized Torch March through the UVA campus. (*See* PX-2805; PX-2594.) When the Defendants, including Cantwell, arrived at UVA's Thomas Jefferson statue, they encircled a group of peaceful counter-protestors, pinned them against the statue, and refused to let them leave, (PX-2500), as a "sign of dominance." (Day 9 Tr. 156:9–12.) Plaintiffs Devin Willis and Natalie Romero were among those who were surrounded. Defendants threw

torches and fluid at the counter-protestors, including Willis and Romero, leading them to believe that they were going to be "burn[ed] [] alive," (Day 5 Tr. 181:15–19 (Willis)), and kicked, punched, pepper-sprayed, and verbally harassed them, (*id*. at 28:18–29:16 (Romero), 176:20–184:18 (Willis).)

- Cantwell was directly involved in the violence in the Unite the Right rally and did not dispute his involvement. Photographic and video evidence shows Cantwell indiscriminately pepper-spraying counter-protesters, including in front of Mr. Willis and Ms. Romero, and punching other counter-protesters. Cantwell also admitted at trial that he "beat[] the shit out of" someone, (Day 16 Tr. 254:5.) Cantwell pleaded guilty to two counts of assault and battery for his crimes on August 11, 2017.

- After the events on August 12, 2017, Cantwell joined his co-conspirators in celebrating their militarized acts of racially motivated violence and intimidation. For example, when a co-conspirator told him, "Physically removing a queer reporter with Chris Cantwell is one of the highlights of my weekend," Cantwell responded, "[i]t was an honor to serve by your side." (PX-0184.) Cantwell later referred to Heather Heyer's grave as a urinal. (Day 16 Tr. 267:8–10.) And when he was ultimately incarcerated alongside co-Defendant Fields for a time, Cantwell gave him a Nazi salute and a hug. (*Id*. 270:18-24.) Summing up his pleasure at having participated in the deliberate, premeditated, racially-motivated violence at Unite the Right, Cantwell later wrote, "[i]f you think the Alt Right is insignificant, you might want to ask the bleeding commie filth we sent to the morgue and hospitals how insignificant we are." (PX-2137.)

The foregoing evidence and the extensive additional evidence presented at trial was more than sufficient for the jury to conclude that Cantwell (and his co-Defendants) were liable for civil conspiracy under Virginia law for their conduct with respect to the Unite the Right event. Substantial evidence also demonstrated that Cantwell (and his co-Defendants) subjected Plaintiffs, including Willis and Romero, to intimidation, harassment, and violence motivated by racial, ethnic, and

-27-

religious animosity in violation of Virginia Code § 8.01-42.1.

Cantwell's arguments on appeal provide no basis for reversal.

*First*, Cantwell argues that the verdict cannot stand because, according to him, Plaintiffs sued Defendants for racially motivated violence, but the jury could not have found him liable for that violence because the jury was unable to reach a verdict on Counts 1 and 2. (Br. at 2.) Cantwell contrasts Counts 3 and 4 as premised on "harassment," which he claims the district court had dismissed. (Br. at 2–4.) These arguments are premised on numerous inaccuracies and mischaracterizations of the claims asserted against him.

Whether the jury found for Plaintiffs on Counts 1 and 2 had no bearing on whether the jury could find for Plaintiffs on legally distinct claims under Counts 3 and 4. As discussed above, Count 4 (Virginia Code § 8.01-42.1) embraced intimidation, harassment, *and* violence. Count 3 (civil conspiracy) included a conspiracy to commit violations of § 8.01-42.1. Contrary to Cantwell's assertions, the Court did not categorically dismiss "harassment" claims. In fact, with two exceptions not relevant here, the Court denied Defendants' motions to dismiss Plaintiffs' civil conspiracy claim under Virginia law.[10] (ECF No. 335 at 47–49.) That conspiracy claim included a conspiracy to violate Virginia's hate crime statute,

---

[10] The district court dismissed the conspiracy claim brought by former Plaintiff Pearce and dismissed the conspiracy claim against Defendant Peinovich and dismissed him from the suit. (ECF No. 335 at 47–49.)

Virginia Code § 8.01-42.1.  (*Id.* at 47.)  While the Court dismissed certain of the Plaintiffs' direct claims under Virginia Code § 8.01-42.1 at the pleading stage, the district court did not dismiss Romero's or Willis's claims at the pleading stage or at any other stage.  (ECF No. 336.)

*Second*, Cantwell attempts to undermine the jury's verdict with the conclusory and erroneous legal assertion that "one cannot harass, or conspire to harass, one who he seeks to avoid a confrontation with."  (Br. at 8–9.)  This assertion seeks to challenge the jury's finding that Cantwell conspired to harass Plaintiffs because Cantwell claims he sought to avoid confrontation with them.  The jury plainly rejected that defense, and Cantwell cannot show an error to justify setting aside that verdict.

*Third*, Cantwell seeks to second guess the verdict by asserting the jury incorrectly weighed the credibility of witnesses.  According to Cantwell, all Plaintiffs gave incredible testimony during trial.  (Br. at 39–45.)  He contends specifically that Mr. Willis had "credibility" problems.  (*Id.* at 14.)  It is well established, however, that an appellate court cannot reverse a jury verdict based on credibility challenges because such determinations "are jury functions, not those of a judge."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citation omitted).

*Fourth*, Cantwell argues the verdict should be reversed because Plaintiffs

should not be allowed to recover when, according to Cantwell, Plaintiffs sought a confrontation with Defendants. (Br. at 8–9.) Cantwell raised this *in pari delicto* argument unsuccessfully in the district court, and it fares no better on appeal. Under this rarely-used doctrine, "a party who consents to and participates in an illegal act may not recover from other participants for the consequences of that act." *Lee v. Nationwide Mut. Ins. Co.*, 255 Va. 279, 282 (1998). The doctrine bars recovery only when the defendant proves that "the plaintiff freely and voluntarily consented to participation in [an] illegal act, without duress or coercion." *Id*. For example, Virginia courts have held that a car thief cannot recover for injuries sustained because of the theft and subsequent joyride. *Id*. Cantwell, as the party raising the defense, had the burden to establish it. *Id.* Despite the district court permitting Cantwell to examine Plaintiffs and other witnesses about whether Plaintiffs had been a party to—or had even seen—any violence on August 11 or 12, the trial evidence simply did not support Cantwell's argument. (*See* ECF No. 1574 at 23–24 & n.6.) In any event, the verdict reflects the jury's finding that Defendants initiated the violence that led to Plaintiffs' injuries.

*Finally*, Cantwell argues he was acting in self-defense and thus should not have been held liable. (Br. at 15–16.) Cantwell did not raise this issue in his post-trial motion, and thus this Court should not consider the argument. *See Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002) ("Issues raised for the first

-30-

time on appeal are generally not considered absent exceptional circumstances."). But even if the Court were to consider the argument, it provides no basis to reverse the jury's verdict. The district court instructed the jury that self-defense was a valid defense to Counts 3 and 4. (ECF No. 1461 at 54–56 (Instruction No. 31).) The jury nevertheless found Cantwell liable on Counts 3 and 4, which means it disagreed that the defense was established by the facts. Cantwell's disagreement with the verdict is insufficient to reverse.

### B. Cantwell's Speculations of an "Improper Jury Motive" Do Not Warrant Reversal.

Cantwell's attempt to impugn the jury verdict with speculation about the jurors' motives also fails. Cantwell objects to the seating of a juror who he labels "an open Antifa sympathizer," the jury's racial demographics, and Plaintiffs' *Batson* challenge to Defendants' striking of a Black juror. Jurors, however, are presumed to be impartial. *Bright v. Coastal Lumber Co.*, 962 F.2d 365, 370 (4th Cir. 1992). None of Cantwell's objections overcome this presumption.

Cantwell's objection to the seating of "an open Antifa sympathizer" refers to the district court's denial of Cantwell's request to strike Juror 220 for cause. "A trial judge has very broad discretion in deciding whether to excuse a juror for cause and his decision will not be overturned except for manifest abuse of that discretion." *Bright*, 962 F.2d at 370 (quoting *Poynter v. Ratcliff*, 874 F.2d 219, 222 (4th Cir. 1989)). When the judge's decision turns on the juror's statements during *voir dire*,

"assess[ing] the credibility of those statements" also rests "within the district judge's discretion." *Poynter*, 874 F.2d at 221–22. Here, the district court denied Cantwell's request because the court credited the juror's statement that he could set aside any preconceived notions and try the case solely according to the law and evidence. (Day 2 Tr. 48:4–9, 50:14–16.) The district court acknowledged this credibility determination when it denied Cantwell's post-trial motion challenging the seating of Juror 220. (ECF No. 1622 at 30.) Cantwell identifies no basis on which to find an abuse of discretion by the district court.

Cantwell also argues there was an "improper jury verdict" based on the jury's racial composition; but this, too, is plainly insufficient to reverse the verdict. Cantwell's argument turns on Plaintiffs' assertion of what he calls a "meritless" *Batson* challenge to Defendants' decision to strike a Black juror and Plaintiffs' allegedly improper exercises of peremptory strikes. (ECF Nos. 1488, 1536, 1577.) Like his self-defense argument, Cantwell failed to raise these challenges in his post-trial motion, and therefore they cannot be asserted on appeal. *See Williams*, 294 F.3d at 614.

Even if the Court were to consider the arguments, neither one supplies a basis to set aside the verdict. Cantwell's assertion that Plaintiffs' *Batson* challenge was "erroneous" cannot show clear error where, as here, the court rejected Plaintiffs' challenge. Cantwell fails to explain how a challenge Plaintiffs made at the bench

-32-

that was rejected by the trial court could have resulted in reversible error.  In any event, this Court will sustain a trial court's *Batson* ruling unless clearly erroneous. *United States v. Dennis*, 19 F.4th 656, 662 (4th Cir. 2021).

Cantwell's conclusory assertion—also raised for the first time on appeal— that Plaintiffs exclusively struck white jurors is also unavailing.  In this Circuit, a *Batson* challenge is untimely if it is raised after the *venire* has been excused, let alone when raised for the first time on appeal.  *See Morning v. Zapata Protein (USA)*, 128 F.3d 213, 216 (4th Cir. 1997).  The district court excused the *venire* on October 27, 2021.  (ECF No. 1336.)

### C.   Cantwell's Challenge to the Jury's Verdict as Unconstitutionally Vague Is Meritless.

Contrary to Cantwell's assertions on appeal (Br. at 5, 22–23), there is nothing vague in the jury's verdict on Counts 3 and 4 or in the application of Virginia Ann. Stat. § 8.01-42.1 to his conduct.  The jury instructions correctly stated the elements of a Virginia state law conspiracy claim and a claim under Virginia Ann. Stat. § 8.01-42.1.  (ECF No. 1461 at 38-40 (Instruction No. 23: Civil Conspiracy – Under Virginia Law); *id*. at 41–42 (Instruction No. 24 – Violation of Virginia Code §8.01-42.1).)  The jury found Cantwell liable on Counts 3 and 4. (ECF No. 1478.)  As discussed *supra* Part IV.A, there was sufficient evidence for the jury to find Cantwell liable.  When the defendant's conduct falls within the statute's core prohibitions, a defendant may not successfully challenge a statute as vague.  *See Village of Hoffman*

-33-

*Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 & n.7 (1982). This alone forecloses Cantwell's challenge to the verdict as unconstitutionally vague.

Cantwell nevertheless argues that the jury instructions "tell[] us very little about the jury verdict" and that the verdict itself leaves the Defendants "without the vaguest idea what they are being punished for" in the punitive damages award. (Br. at 22, 25.) As the district court astutely observed when it rejected Cantwell's challenge to the verdict as vague in his post-trial motion for judgment:

> Cantwell's argument . . . does nothing more than attempt to fabricate an inconsistency or ambiguity in the verdict when there is none. The jury found Cantwell liable for conspiracy. The jury also found Cantwell liable for one of the listed predicate unlawful acts—racial, religious, or ethnic harassment or violence, in violation of Virginia Code § 8.01-42.1.

(ECF No. 1622 at 28.) Notwithstanding Cantwell's claim of confusion, there is nothing vague about the verdict finding Cantwell liable on Counts 3 and 4.

### D.    Cantwell's First Amendment Challenge Does Not Overcome the Presumption That the Jury Followed the Jury Instructions.

Cantwell contends that, given the jury's inability to reach a verdict on Counts 1 and 2, the jury must have held him and other Defendants liable for something other than violence, specifically it must have held him liable for speech. (Br. at 5.) The jury instructions and the verdict foreclose this argument.

As the district court correctly ruled when it denied Cantwell's post-trial motion asserting First Amendment challenges to the jury's verdict (ECF No. 1622

-34-

at 29), the First Amendment does not protect speech "likely to incite lawless action." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982); *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 271 (4th Cir. 2010) (noting that "incitement of illegal activity" is among "certain categories of 'unprotected' speech that may be circumscribed entirely").

The jury instructions carefully differentiated this unprotected speech from protected speech, such as "abstract advocacy of lawlessness" or "mere advocacy of the use of force." (ECF No. 1461 at 53 (Instruction No. 30: First Amendment).) Juries are presumed to follow the court's instructions. *CSX Transp.*, 556 U.S. at 841. Cantwell's unfounded and illogical conclusion that the jury held him liable for his speech is insufficient to demonstrate that the jury ignored the Court's instructions. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 427 (4th Cir. 1996) (concluding that "the mere fact the jury found for Appellees is not evidence that it ignored this curative instruction").

## V. CANTWELL HAS NOT SHOWN THAT THE PUNITIVE DAMAGES AWARD IS UNCONSTITUTIONALLY EXCESSIVE OR OPPRESSIVE.

Despite the district court's reduction of the punitive damages award to a total of $350,000 (ECF No. 1629 at 2), Cantwell objects that the award is still unconstitutional. (Br. at 46–47.) This Court "review[s] a determination of the constitutionality of punitive damages de novo." *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 152 (4th Cir. 2008). Cantwell argues that the district court

-35-

erroneously rejected his damages ratio challenge by holding all Defendants liable for Count 5 (a count asserted against Fields and a predicate act for the conspiracy in Count 3) and that the damages ratio shows that the jury improperly punished Defendants for their words due to disagreement with the Defendants' views. (Br. at 46-47.) Neither argument provides any basis to vacate the punitive damages award.

Cantwell's argument that the punitive damages award, in essence, improperly holds him liable for Count 5 is clearly incorrect. (Br. at 46.) As a preliminary matter, the district court properly held that an "aggregate approach to calculating the punitive to compensatory damages ratio is appropriate, well supported, and accords with the posture of this case." (ECF No. 1622 at 76.) In any event, however, the district court held in the alternative that the award was constitutionally valid even under Cantwell's preferred claim-by-claim approach, and even as limited to the jury's verdict against Cantwell on Counts 3 and 4. (*See id.* at 79 ("[E]ven under Defendants' preferred 'claim-by-claim' approach," "for [Count] IV, . . . each of the five Defendants would be responsible for about $2,916 in punitive damages on this count, resulting in a 0.029 ratio of punitive to compensatory damages for this count."); *id.* at 80 ("[U]nder a "claim-by-claim" approach for Count III, Kessler, Spencer, and Cantwell, would each be responsible for $7,292 in punitive damages—resulting in a 7,292:1 ratio.").) As the district court explained, these ratios are not unconstitutional because "when a jury only awards nominal damages or a small

amount of compensatory damages, a punitive damages award may exceed the normal single digit ratio because a smaller amount 'would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter.'" *Saunders*, 526 F.3d at 154 (quoting *Kemp v. AT&T*, 393 F.3d 1354, 1364–65 (11th Cir. 2004)).

Cantwell also asserts that the punitive damages award is improper because of his purported inability to pay, which he says he demonstrated from an application to proceed *in forma pauperis* and unspecified "other motions." (Br. at 48.) But Cantwell introduced no evidence concerning his financial condition at trial, as required under Virginia law, or in his post-trial briefing. *See Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 581 (2011) (holding that a defendant who "did not introduce evidence of [its] financial situation at trial . . . . cannot prevail before this Court on its claim that the amount of punitive damages would be oppressive."); *see also McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 976 (4th Cir. 2020) (remanding because district court admitted evidence of appellant's parent company's ability to pay which was irrelevant to the issue of whether appellant could pay the punitive damages award). Thus, Cantwell's assertion now of his inability to pay is insufficient to reverse or vacate the punitive damages award.

## VI.    CANTWELL'S CHALLENGES TO THE AWARDS OF ATTORNEY'S FEES AND COST DO NOT WARRANT VACATUR OF THE AWARDS.

As a final matter, Cantwell's challenges to orders regarding attorney's fees and costs for Plaintiffs provide no basis to vacate the awards. (Br. at 48–50.) There are two orders at issue here: (1) the magistrate judge's report and recommendation, which recommended that the district court award Plaintiffs $12.7 million in attorney's fees and roughly $546,000 in Rule 54(d) costs, (ECF No. 1655), and (2) the magistrate's judge separate order awarding Plaintiffs roughly $1.26 million in costs for discovery expenses recoverable under the parties' ESI Stipulation and Order, (ECF No. 1656).

*First*, this Court lacks jurisdiction over Cantwell's challenges to the magistrate judge's report and recommendation because that order was non-final. Although the district court has issued an order adopting that report and recommendation, (*see* ECF No. 1660), Cantwell has not appealed from that order. *Second*, even if this Court had jurisdiction, Cantwell did not object to the magistrate judge's report and recommendation, thereby waiving any challenge on appeal. *Third*, his arguments here provide no basis to vacate the awards, as he has not shown any abuse of discretion.

### A.    This Court Lacks Jurisdiction Over the Magistrate Judge's Non-Final Order on Attorney's Fees and Costs.

As a threshold matter, this Court lacks jurisdiction over Cantwell's challenge

-38-

to the magistrate judge's report and recommendation on attorney's fees and Rule 54(d) costs. That report and recommendation was not a final order, nor was it an appealable interlocutory or collateral order. *See* 28 U.S.C. §§ 1291, 1292; *see also In re Dist. Clerk's Office Operations*, 857 F. App'x 766, 766 (4th Cir. 2021) (unpublished) (dismissing appeal because "[t]he magistrate judge's report and recommendation is neither a final order nor an appealable interlocutory or collateral order"). Thus, the Court should reject Cantwell's objections to the report and recommendation on attorney's fees and Rule 54(d) costs for lack of jurisdiction.

Nor is there jurisdiction over the district court's order adopting the magistrate judge's report and recommendation because Cantwell has not appealed that order. Federal Rule of Appellate Procedure 3 requires the filing of a notice of appeal, which "must . . . designate . . . the appealable order . . . from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). Rule 3's requirements are jurisdictional. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988) (holding that "a court . . . may not waive the jurisdictional requirements of Rules 3 and 4 . . . if it finds that they have not been met"). Cantwell has not filed a notice of appeal from the district court's March 30, 2023, order adopting the magistrate judge's report and recommendation. While this Court may construe an informal brief as a notice of appeal when it complies with Rule 3's requirements, *Smith v. Barry*, 985 F.2d 180, 184 (4th Cir. 1993), Cantwell's brief was filed on March 20, 2023—ten days before

-39-

the district court's final order—and thus cannot challenge the subsequently issued

order.  Thus, there is no jurisdiction over the district court's order.[11]  *See Jackson v.*

*Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014) (dismissing appeal from district court

order not named in the *pro se* appellant's notice of appeal or informal brief).

## B.    Cantwell Waived Any Challenge to the Award of Attorney's Fees and Costs.

Even if the Court had jurisdiction, Cantwell has waived any challenge to the

district court's adoption of the magistrate judge's report and recommendation on

attorney's fees and Rule 54(d) costs because he did not object to the recommendation

in the district court.  *See United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)

("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object

to the finding or recommendation on that issue with sufficient specificity so as

reasonably to alert the district court of the true ground for the objection."); *see also*

*King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016) (concluding party waived

right to appeal an issue when the party did not object to magistrate judge's

recommendation adopted by district court).  Indeed, Cantwell failed to object despite

the magistrate judge's explicit warning that a "[f]ailure to file timely written

objections to these proposed findings and recommendations within 14 days could

---

[11] While Cantwell did not file a notice of appeal from the March 7, 2023 order awarding Plaintiffs costs for discovery expenses reimbursable under the parties' ESI Stipulation and Order, his informal opening brief may be construed as a timely appeal from that order.  *See Smith*, 985 F.2d at 184.

waive appellate review." (ECF No. 1655 at 46); *Wright v. Collins,* 766 F.2d 841, 846 (4th Cir. 1985) (holding that a *pro se* litigant must receive "fair warning of the possible consequences of a failure to object . . . before failure to object will result in waiver of the right of appeal"); *see also Amerson v. Stevenson*, 504 F. App'x 217, 218 (4th Cir. 2013) (unpublished) (concluding that *pro se* appellant waived appeal of magistrate judge's recommendation by failing to timely object where the magistrate "advised [litigant] that failure to file timely objections to this recommendation could waive appellate review of a district court order based upon the recommendation").

### C.    In Any Event, Cantwell Has Not Established Any Abuse of Discretion in the Awards.

Cantwell has identified no basis to vacate the award of attorney's fees and Rule 54(d) costs, or the award of costs for discovery expenses, under the applicable abuse of discretion standard. *See Hudson v. Pittsylvania County*, 774 F.3d 231, 236 (4th Cir. 2014) ("[T]he court will only reverse such an award if the district court is clearly wrong or has committed an error of law." (internal quotation marks and citation omitted)); *see also In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 27 F.4th 291, 306 (4th Cir. 2022) (affirming the district court's fee award after finding that it was not "clearly wrong").

The magistrate judge issued an extensive analysis of the propriety of

-41-

attorney's fees and Rule 54(d) costs in a 46-page report and recommendation, (ECF No. 1655), and he provided great detail and reasoning to support the costs award for discovery expenses, (ECF No. 1656). Cantwell does not challenge the reasoning or the detail in the magistrate's recommendation and district court's order. Rather, he repeats his argument that the jury's verdict on Counts 3 and 4 must be overturned because it was unable to reach a verdict on Counts 1 and 2, which is addressed above, *supra* Part IV.

Cantwell also argues that the magistrate judge erroneously concluded that no Defendant objected to Plaintiffs' request to be reimbursed for discovery expenses under the parties' ESI Stipulation and Order. (Br. at 49.) This contention does not undermine the magistrate judge's well-reasoned conclusion, nor is it accurate: Defendants hardly mentioned costs in their briefing, and none disputed that Plaintiffs were entitled to be reimbursed for expenses incurred for a third-party discovery vendor under the terms of the agreement. (ECF No. 1656 at 1 ("No Defendant has opposed Plaintiffs' request to be reimbursed for these specific e-discovery expenses under the terms of the ESI Stipulation & Order").) In Cantwell's responses to Plaintiffs' request to be reimbursed under the ESI Stipulation and Order, Cantwell disputed only the merits of the jury's verdict and raised his (waived) arguments regarding his incarceration. (*See, e.g.*, ECF Nos. 1602, 1610.) Thus, Cantwell's assertions are insufficient to vacate the awards of attorney's fees and costs.

-42-

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court affirm the jury verdict, the district court's evidentiary rulings at issue here, the punitive damages award against Cantwell with respect to Cantwell's challenges raised in this appeal, and the award of costs for discovery expenses.  In addition, the Court should conclude that it lacks jurisdiction over Cantwell's challenge to the magistrate judge's report and recommendation on an award of attorney's fees and Rule 54(d) costs to Plaintiffs or, in the alternative, affirm the district court's final order adopting the magistrate judge's report and recommendation.

Dated: April 17, 2023

Raymond P. Tolentino
Jacqueline Sahlberg
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
rtolentino@kaplanhecker.com
jsahlberg@kaplanhecker.com

Roberta A. Kaplan
Gabrielle E. Tenzer
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com

Respectfully submitted,

*/s/ David E. Mills*

David E. Mills
Joshua M. Siegel
Robby L.R. Saldaña
Caitlin B. Munley
Khary J. Anderson
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
rsaldana@cooley.com
cmunley@cooley.com
kjanderson@cooley.com

Alan Levine
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com

Karen L. Dunn
Jessica Phillips
PAUL WEISS RIFKIND WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
jphillips@paulweiss.com

-44-

Yotam Barkai
Melina M. Meneguin Layerenza
PAUL WEISS RIFKIND WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990
ybarkai@paulweiss.com
mmeneguin@paulweiss.com

*Counsel for Plaintiffs-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs do not believe that oral argument is necessary for the Court to resolve the issues presented in this appeal.

## CERTIFICATION OF COMPLIANCE WITH FRAP 32(g)(1)

Undersigned counsel certifies that this brief complies with the applicable type volume limitations in Fed. R. App. P. 32(a)(7).  This brief contains 10,827 words, exclusive of the components that are excluded from the word count limitation in Rule 32(f).  This certificate was prepared in reliance upon the word-count function of the word processing system (Microsoft Word) used to prepare this brief.  This brief complies with the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface using font size 14 Times New Roman.

Dated: April 17, 2023

/s/ *David E. Mills*
David E. Mills
COOLEY LLP

*Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF SERVICE**

It is hereby certified that, on this 17th day of April 2023, this document, filed through the CM/ECF system, will be served electronically to the registered participants on the Notice of Electronic Filing. In addition, I hereby certify that on April 17, 2023, I served the following via electronic mail:

Christopher Cantwell
christopher.cantwell@gmail.com

/s/ David E. Mills
David E. Mills
COOLEY LLP

*Counsel for Plaintiffs-Appellees*